## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TINA NEVILLE and RACHEL BENNETT, on behalf of herself and others similarly situated,

        Plaintiffs,

        v.

CHARLOTTE A. BURROWS, in Her Official Capacity as Chair of the United States Equal Employment Opportunity Commission

        Defendants,

Civil Action No. 1:22-cv-03246

## CLASS ACTION COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

### I.    NATURE OF THE ACTION

1.    Plaintiffs, Tina Neville and Rachel Bennett, on behalf of themselves and all others similarly situated, bring this action under Title VII of the Civil Rights Act of 1964 and the Administrative Procedure Act ("APA") to address the failure of Defendant, the acting Chair of the United States Equal Employment Opportunity Commission ("EEOC"), to enforce its order prohibiting and punishing employment discrimination by United States military agencies. 42 U.S.C. § 2000(e); 5 U.S.C. §§ 701–706.

2.    Plaintiffs and the members of the class they represent are dual-status employees of United States military agencies who (a) were discriminated against in the course of their employment, (b) obtained judgment for relief against their employers through

the EEOC and (c) were never properly administered relief by those employers under those judgments.

3.    Dual-status employees work in a civilian capacity during the standard workweek but must also maintain an active membership in the National Guard. If the employee loses their affiliation with the Guard, that employee will also lose their civilian position within 30 days.

4.    Through this action, Plaintiffs challenge the acting Chair's failure to refer the case to the Attorney General (AG) when it could not enforce its own decisions. 29 C.F.R. § 1614.502(a); 29 C.F.R. § 1614.503; 42 U.S.C. § 2000(e)–5(f)(1); 42 U.S.C. § 2000(e)–16(d).

5.    Through this action, Plaintiffs challenge the acting Chair's failure to refer the case to the Office of Special Counsel (OSC) when it could not enforce its own decisions. 29 C.F.R. § 1614.502(a); 29 C.F.R. § 1614.503(f); Memorandum of Understanding Between U.S. Office of Special Counsel And Equal Employment Opportunity Commission, https://www.eeoc.gov/mou/memorandum-understanding-between-us-office-special-counsel-and-equal-employment-opportunity (Last Viewed on October 24, 2022); 42 U.S.C. § 2000(e)–5(f)(1); 42 U.S.C. § 2000(e)–16(d).

6.    This failure continues to injure Plaintiffs and similarly situated dual-status employees by preventing the individuals who have endured unlawful discrimination from obtaining the appropriate relief as ordered by the EEOC under the EEOC's valid investigatory measures under the law.

II.    **JURISDICTION AND VENUE**

7.    Plaintiffs bring this putative class action under the APA, Title VII of the Civil Rights

Act, and the All Writs Act.

8.    This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331

because this case raises federal questions under the

   a.   APA. 5 U.S.C. §§ 701-706.

   b.   Title VII of Civil Rights Act of 1964. 42 U.S.C. § 2000(e).

   c.   The All Writs Act. 28 U.S.C. § 1651.

9.    Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to the claims occurred in this district.

Defendant, the EEOC, is an agency of the United States headquartered in

Washington, D.C.

### III.    PARTIES

10.   Plaintiff Tina Neville was a dual-status Aircraft Mechanic at Lackland Air Force Base

when she was forced into medical retirement after incurring a serious injury in her

civilian employment. Plaintiff's supervisor demanded that she disregard post-surgical

medical instruction restricting her to light duty because "guys don't get

hysterectomies," and required that she complete tasks outside the scope of her

doctor's recommendation.

11.   Plaintiff Rachel Bennett was a dual-status technician in the Wyoming National Guard

when she reported sexual harassment and solicitation of sexual favors by superior

officers communicated to her by multiple subordinate women. Ms. Bennett was

subsequently subjected to a rigorous investigation process and terminated from her

civilian role in retaliation for those reports.

12.    Defendant Charlotte A. Burrows is the Chair of the EEOC, a statutory officer under 42 U.S.C. § 2000(e)–4(a). The Chair is responsible for the administrative operations of the EEOC and is sued in her official capacity only. This Complaint may interchangeably refer to the Defendant as "the EEOC," "the Commission," or "Defendant."

## IV.    FACTUAL ALLEGATIONS

*Background*

13.    Plaintiffs are individuals who have, in their civilian employment with United States military agencies, been victims of discrimination prohibited under Title VII of the Civil Rights Act of 1964.

14.    Plaintiffs sought assistance through the EEOC for relief and enforcement of anti-discrimination legislation from employers in the federal sector under 42 U.S.C. §§ 2000(e)–(5) and 2000(e)–(6) with a well-founded belief that the EEOC would advocate on their behalf and rectify the discriminatory action taken by military agencies.

15.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(b), created the EEOC and statutorily empowered the Commission to prevent unlawful discrimination in both private and public sectors. The statute sets forth the enforcement process, providing employees of a government agency the right to file a complaint with the EEOC based on discrimination by that agency during the employment.

16.    Where a respondent to a valid complaint of discrimination is a government agency and that agency fails to reach a mutual conciliation agreement with the EEOC, e.g., the Agency fails to comply with the EEOC's orders, the EEOC must refer the case to

the AG of the Department of Justice (DOJ) for further investigation and enforcement. See 4, *supra.*

17.    Where a respondent to a valid complaint of discrimination is a government agency and that agency fails to reach a mutual conciliation agreement with the EEOC, e.g., the Agency fails to comply with the EEOC's orders, the EEOC must refer the case to the Office for Special Counsel (OSC) for further investigation and enforcement. See 5, *supra.*

18.    In the Class Action Plaintiffs' cases, it appears the EEOC has not referred the cases to the AG at the DOJ or the OSC. Instead, despite the EEOC's extensive use of investigations, hearings, and an administrative appellate process to determine Plaintiffs had suffered discrimination in their civilian federal employment with military agencies, it appears the EEOC has not taken further action.

19.    The EEOC's failure to implement federal law under the authorizing statute's complaint process harms Plaintiffs and other individuals subjected to such discrimination by the military arm of the United States Government. The EEOC's actions blatantly defy 42 U.S.C. §§ 2000(e)–5 and 2000(e)–16, avoid its own regulations, and ignore the purpose and articulated goal of the Commission to prevent and terminate unlawful employment practices, including discrimination during the employment with federal agencies.

20.    The EEOC's subversion of the statutory process in Title VII prevents victims of discrimination from obtaining relief. Many Class Action Plaintiffs have endured over ten (10) years of administrative processes in an effort to obtain relief. While the

EEOC has determined relief is warranted, no such relief has ever been provided to the Plaintiffs.

*The EEOC Complaint Process*

21.    The EEOC is empowered to prevent unlawful employment discrimination including discrimination in both the private sector and federal agencies. 42 U.S.C. §§ 2000(e)–5(b) and 2000(e)–16(b).

22.    Title VII of the Civil Rights Act also sets forth the EEOC charge process. Charges must be filed with the Commission within 180 days of the alleged discriminatory act.

23.    Upon receiving a complaint, the Commission must conduct an investigation based upon the claim. Based on its findings, the Commission will then issue a notice allowing complainants to either (1) request a hearing before an Administrative Judge ("AJ") or (2) request the Commission issue a decision as to whether the discrimination occurred.

42 U.S.C. §§ 2000(e)–5(b).

24.    If a complainant selects a hearing, the Commission will issue a final order within 40 days of the AJ's decision. The Commission's order will indicate whether the EEOC agrees with the AJ's decision and if so, grant the relief ordered by the judge. That order will also contain information about the complainant's right to appeal to the EEOC, the complainant's right to file a civil action in a federal district court, and the relevant deadlines.

*EEOC Office of Federal Operations*

25.    Once the Commission issues a final action, a party may appeal the decision within 30 days after receiving it. Such an appeal is made to the EEOC's Office of Federal

Operations ("OFO"). Most appellate decisions are issued by the EEOC's OFO, and
the decision issued represents the EEOC's official position on the matter decided.

26.     If an agency fails to comply with an EEOC appeal decision, the complainant can
either (1) file a petition for enforcement with the EEOC or (2) file a lawsuit in court
to enforce the award.

*EEOC Petition for Enforcement*

27.     A complainant may petition the Commission to enforce a decision issued under the
Commission's appellate jurisdiction. The petition shall be submitted to the OFO
which "shall take all necessary action to ascertain whether the agency is
implementing the decision of the Commission." 29 C.F.R. § 1614.503(a)–(b).

28.     If the relevant agency is not implementing the Commission's decision, and the OFO
is "unable to obtain satisfactory compliance with the final decision, the Director shall
submit appropriate findings and recommendations for enforcement to the
Commission," or, as directed, "refer the matter to another appropriate agency." 29
C.F.R. § 1614.503(d).

29.     Where the EEOC "has determined an agency is not complying with a prior decision,
or where an agency has failed or refused to submit any required report of compliance,
the Commission shall notify the complainant of the right to file a civil action for
enforcement of the decision under Title VII to seek judicial review of the agency's
refusal to implement the ordered relief under the Administrative Procedure Act." 29
C.F.R. § 1614.503(g).

*EEOC Respondent's Failure to Comply*

30.  When the alleged discriminatory respondent is a "government, governmental agency, or political subdivision," and the EEOC has been unable to secure from that respondent a conciliation agreement acceptable to the EEOC, the Commission **"shall refer the case to the Attorney General, who may bring a civil action against such respondent in the appropriate United States district court."** 42. U.S.C. § 2000(e)–5(f)(1).

31.  If neither the EEOC nor the AG have sued, either the EEOC or the AG shall notify the complainant that a civil action can be brought by the complainant against the alleged discriminatory respondent.

32.  To date, it appears the AG has not contacted either Plaintiff giving further belief the EEOC has not made the necessary referrals.

*The Feres Doctrine*

33.  For the Class Action Plaintiffs, a civil action against a military agency would typically be precluded by the *Feres Doctrine.* This doctrine bars complainants from bringing civil action against the military if the injury occurred incident to service. Courts have broadly held that discrimination is an injury incident to military service. *Feres v. United States*, 340 U.S. 153 (1950).

34.  But under 32 U.S.C. § 709(f)(5), the provisions of § § 7511, 7512, and 7513 of title 5, and § 717 of the Civil Rights Act of 1991 (42 U.S.C. 2000e–16) shall apply to dual-status technicians;

35.  Thus, the EEOC is the sole check on military agencies discriminatory acts in its civilian employment practices, and without referral by the EEOC to the AG and OSC,

the Class Action Plaintiffs will likely never obtain the relief they have been awarded

under valid EEOC findings.

***Named Plaintiff Tina Neville***

36.   Plaintiff Tina Neville was a dual-status technician in the Texas Air National Guard,

where she served both as a member of the Guard and as a civilian employee. Ms.

Neville was the only female Aircraft Mechanic among the 25 flight-line

crewmembers.

37.   Ms. Neville's dual-status position required her to be an active member of the National

Guard. Guard technicians are in a hybrid position that combines both military and

civilian employment features. When Ms. Neville worked one weekend per month (i.e.

activated or on active duty) she worked in her capacity as Guard member.

Alternatively, when she worked during the weekdays she worked as a federal civilian

employee.

38.   In Mach of 2006, Ms. Neville had a hysterectomy, at which time endometrial tissue

was discovered and removed from several of her internal organs. Over the next year,

because of complications from that operation, Ms. Neville submitted physician's

paperwork to her supervisor ordering her to work on light duty.

39.   Despite her physician's order, Ms. Neville's new supervisor assigned Ms. Neville

full-duty work because, in his words, "guys don't get hysterectomies."

40.   On June 25, 2007 Ms. Neville's supervisor assigned her the full-duty task of airplane

recovery and tank reconfiguration. As Ms. Neville attempted to remove a twenty-

pound ladder leaning against an airplane, she experienced a sudden sharp pain in her

back and knee due to the lack of stomach muscle support from the surgery. Ms.

Neville's severe injury caused her to take nearly a full year of leave and ultimately forced her into a medical retirement.

41. Further, around June 26, 2007 Ms. Neville's supervisor issued a performance appraisal. While the wording was nearly identical to Ms. Neville's 2005-2006 evaluation, for which she received "outstanding" ratings, on this appraisal Ms. Neville only received a "fully successful," designation. When Ms. Neville asked about this downgrade, her supervisor stated he would not give an "outstanding" rating to an employee whom he and "the guys do not respect."

*Tina Neville's EEOC Proceedings*

42. On November 13, 2007, Ms. Neville filed an EEO complaint alleging that the Air Force ("USAF") and National Guard Bureau ("NGB") had discriminated against her on the basis of sex (female) and disability (complications from surgery). After a hearing, an EEOC Administrative Judge ("AJ") issued a decision on January 26, 2011 finding Ms. Neville established that she had been subjected to discrimination on the basis of gender.

43. The AJ also found other incidents of gender discrimination, including comments that Ms. Neville's supervisor and other crew members made about Ms. Neville that she was a "lesbian," "dumb dyke," "muff driver," "carpet muncher," "queer," and "dumb bitch."

44. Witnesses testified that Ms. Neville's supervisor joined in the offensive behavior, laughed at the jokes and comments, and failed to admonish the crewmembers or correct their behavior. Additionally, in the presence of Ms. Neville's supervisor, crew members would make demeaning prank calls to restaurants where other crew

members were eating. Then, the caller would have the hostess announce over the intercom a male crew member's name and say "[Ms. Neville] called to say she loves you and misses you."

45.    The AJ found that Ms. Neville was entitled to back pay with interest and benefits for the period from June 25, 2007, to August 26, 2008, and ordered an amendment to her 2006-2007 performance appraisal. And the AJ found Ms. Neville was entitled to $92,500 in non-pecuniary compensatory damages for the emotional and physical harm she suffered as a result of the discrimination, and $63,675.03 for attorney fees and costs. Finally, the AJ ordered NGB to provide EEO training and post a notice of discrimination for twelve months and recommended that the NGB take disciplinary action against Ms. Neville's supervisor.

46.    Then the USAF and NGB issued a final order rejecting the AJ's decision and appealed the EEOC decision to the Office of Federal Operation ("OFO"). Notably, **the NGB did not contest the merits of the AJ's findings of discrimination**. Instead, the NGB asserted the EEOC did not have jurisdiction over the matter because the personnel actions were military in nature.

47.    On August 1, 2013, the OFO issued its decision regarding the NGB's appeal. The OFO found that the record clearly established the discrimination had occurred while Ms. Neville was working in her federal civilian capacity and upheld the AJ's decision. The OFO's decision extensively outlined Title VII jurisdiction under the EEOC and federal courts regarding dual-status National Guard technicians and applied that jurisdictional analysis to the facts of Ms. Neville's case.

48.  The OFO conclusively found the discrimination occurred during the workweek while Ms. Neville was in her civilian aircraft mechanic position, not while she was in her weekend drill capacity. Ms. Neville's light duty restriction from her physician was for her civilian work specifically, since she had a separate profile that made her non-deployable in her military capacity. Ms. Neville was injured while attending to returning aircraft in her civilian position. The discriminatory performance evaluation was based on her civilian duties.

49.  Similarly, the gender-based comments and demeaning jokes also occurred while Ms. Neville was working as a civilian mechanic. Ms. Neville's supervisor and co-workers committed the discrimination while they were in their civilian capacities, which is within the jurisdiction of the EEOC.

50.  On August 1, 2013, the OFO ordered the NGB to provide back pay, non-pecuniary compensatory damages, attorney's fees, and other remedial actions within 60 days.

51.  On October 21, 2013, after the OFO's ordered deadlines had all passed, Major General John F. Nichols sent Ms. Neville a letter stating that under his authority, the EEOC does not have jurisdiction over Ms. Neville's complaint. The Major General stated the OFO and AJ determinations of jurisdiction were incorrect and indicated he would order a military investigation and render a decision on Ms. Neville's complaint.[1]

*Tina Neville's Petition for Enforcement*

---

[1] As the time of this submission, Ms. Neville and her counsel are unaware of any investigation conducted by MG Nichols. To their knowledge, Ms. Neville, her attorney, or any of her work colleagues were interviewed by MG Nichols, the Texas Air National Guard, the U.S. Air National Guard Bureau, the U.S. Air Force, or the Department of Defense. An outstanding FOIA request is supposed to be answered by the Government this December.

52.    On December 17, 2013, Ms. Neville petitioned the Commission to enforce the order.

53.    Nearly eighteen months later on July 2, 2015, the day after Ms. Neville filed her

initial petition for a *Writ of Mandamus* (see *Court Proceedings* below), the

Commission responded to Ms. Neville's Petition for Enforcement ("PFE") and issued

a decision. The Commission found Ms. Neville was acting in her federal civilian

capacity under protection of Title VII, that the Texas National Guard is a federal

executive agency, and that the Agency acted in a discriminatory manner which

caused extreme harm to Ms. Neville.

54.    In the PFE decision, the Commission also ordered eleven specific actions. First,

within 30 calendar days, Ms. Neville was to be paid $150,000 in non-pecuniary

compensatory damages. Next, within 30 calendar days Ms. Neville was to be paid all

back pay, with interest and benefits for the period from June 25, 2007 to August 26,

2008. Third, Ms. Neville's benefits were to be restored including sick and annual

leave, seniority, health and life insurance, any in-grade steps, and/or promotions to

which she would have been entitled. Next, calculations of overtime were to be made.

Fifth, the Agency was required to cooperate in assisting the EEOC in calculating back

pay and benefits. Additionally, if there was a dispute about the amount of back pay,

interest due, and/or other benefits, the Agency was ordered to issue a check to Ms.

Neville for the undisputed amount within 30 days of the PFE order after which Ms.

Neville could petition for enforcement of the remainder in dispute.

55.    Further, within 30 days, Ms. Neville was to be paid $63,675 for attorney fees and

costs, with additional attorney's fees and costs incurred during the appeal to be

calculated. Then, within 30 days, Ms. Neville's 2006-2007 performance report was to

be amended. Similarly, within 30 days the Agency was to provide at least sixteen hours of in-person training to all management officials and employees at Lackland Air Force Base in the 149th Fighter Wing Flight Line Section. Next, the Agency was to consider taking appropriate disciplinary action against responsible management officials and coworkers involved in the harassment of Ms. Neville. Finally, the Agency was to post a provided notice of discrimination.

56.    The Agency never complied with this PFE order or any of the previous orders administered by the EEOC AJ or OFO. The EEOC also took no further action to refer the case externally or enforce the order from within.

57.    The EEOC's failure to refer these cases to the AG is unlawful. This failure directly violates Congress' clear command that the EEOC transfer responsibility for an employment discrimination case with a federal agency to the AG for further justice and enforcement. Therefore, the EEOC is violating its duty as set forth in Title VII of the Civil Rights Act of 1964.

58.    The EEOC's failure to refer these cases to the OSC is unlawful. This failure directly violates Congress' clear command that the EEOC transfer responsibility for an employment discrimination case with a federal agency to the OSC for further justice and enforcement. Therefore, the EEOC is violating its duty as set forth in Title VII of the Civil Rights Act of 1964.

*Tina Neville's Court Proceedings*

59.    On July 1, 2015, after not receiving a response to the PFE for over 685 days, Plaintiff Tina Neville filed a petition for a *Writ of Mandamus* in the United States District Court for the District of Columbia to request a response to her PFE from the EEOC

or, in the alternative, a compelled response from the Department of Defense ("DoD")

and the USAF regarding the lack of compliance with the EEOC's previously issued

orders.

60.    On March 18, 2016 Ms. Neville filed an amended petition for a *Writ of Mandamus*

under the EEOC's PFE decision issued the day after her initial filing. This revised

petition sought enforcement of the OFO decision and PFE decision and joined an

offending Agency, the Texas National Guard.

61.    On November 10, 2016 the case was transferred to the United States District Court

for the Western District of Texas, San Antonio Division, under 28. U.S.C. §§ 1404

and 1406, upon determination that venue was not proper in the District of Columbia

regarding both the State and Federal Respondents.

62.    On March 29, 2018 the Western District of Texas granted the EEOC's Motion to

Dismiss and Alternative Motion for Summary Judgment, granted the Federal

Respondent's Motion to Dismiss and Alternative Motion for Summary Judgment,

granted the State Respondent's Motion to Dismiss and Alternative Motion for

Summary Judgment, and denied Ms. Neville's Motion for Summary Judgment and

Alternative Motion for Directed Verdict. Each of these conclusions were drawn on

jurisdictional grounds.

63.    Ms. Neville subsequently appealed the District Court's decision to the United States

Court of Appeals for the Fifth Circuit. On September 9, 2019 the Fifth Circuit

affirmed the District Court's ruling and ordered Ms. Neville to pay the defendant-

appellees costs on appeal.

64.    Ms. Neville later filed a Petition for a *Writ of Certiorari* in the United States Supreme

Court, but that Petition was denied on April 6, 2020.

65.    Ms. Neville, like the similarly situated Class Action Plaintiffs, exhausted all modes

for recourse under Title VII, including pursuing charges against discriminatory actors

through the EEOC's statutorily enumerated process and then in federal district court.

Thus, Plaintiffs have no available avenue for justice where the EEOC continues to

neglect its statutory duties to enforce its decisions against discriminatory employers.

### Named Plaintiff Rachel Bennett

66.    Plaintiff Rachel Bennett was a dual-status technician and Major in the Wyoming

National Guard: She served both as a member of the military and as a civilian

employee. By 2012, Ms. Bennett had been a member of the Guard for fifteen years.

67.    Ms. Bennett's dual-status position required her to be an active member of the

National Guard, and like Ms. Neville, when Ms. Bennett worked one weekend per

month she worked in her capacity as a Guard member but otherwise worked as a

federal civilian employee. Ms. Bennett's civilian position was Director of Personnel.

68.    Throughout her career, Ms. Bennett was an exemplary officer and was formally

recognized as Officer of the Year twice.

69.    In February of 2012, multiple female subordinates came to Ms. Bennett to express

concern regarding sexual harassment and superior officers trading advancements for

illicit sexual favors. Essentially, Ms. Bennett's subordinates told her women were

being forced to perform sexual acts in exchange for promotions.

70.    A few days after receiving a report of inappropriate behavior between senior officers,

Ms. Bennett reviewed the relevant regulation and brought the report to her supervisor.

While her report was not seemingly taken seriously, Ms. Bennett believed she had

followed protocol with due diligence and therefore the issues were no longer within

her purview.

71.    Shortly thereafter, Ms. Bennett noticed extremely unusual behavior exhibited by

members of the squadron for which she had been the commander and the Director of

Personnel for several years. By the end of February 2012, the dynamic within Ms.

Bennett's squadron underwent a marked change, becoming hostile, including

drastically less communication, and consisting of members who were usually angry

or on edge.

*Discrimination and Retaliation*

72.    After reporting the concerns of her subordinates to her direct supervisor, Ms. Bennett

was presented to her squadron and while she stood in the middle, superior officers

informed her squadron that she was the subject of a criminal investigation.

73.    Ms. Bennett was then removed from all activity with her squadron. She was

prohibited from communicating with any of her squadron's members and they were

prohibited from communicating with her. Similarly, during the subsequent

investigations Ms. Bennett was prohibited from seeing the Director of Psychological

Health on base.

74.    After Ms. Bennett was informed that she was under investigation, neither the cause

for nor the topic of the investigation was revealed to her despite repeated inquiries.

75.    Throughout these investigations and termination proceedings, Ms. Bennett had an

attorney assigned by Area Defense Council. Unfortunately, that attorney withdrew

after telling Ms. Bennett that he was being threatened, including threats of pursuing a revocation of his bar license, and that he was being forced to withdraw.

76. On a Friday evening in March of 2012, Ms. Bennett received a call demanding that she report to base at 0700 the next morning for an interrogation. Although it should have been a drill weekend, when she arrived at the base all drill activities had been cancelled for the day and instead of the thousands of people she expected, Ms. Bennett's car was the only vehicle in the parking lot.

77. During the interrogation on March 4, 2012, Colonel Loren Johnsen asked Ms. Bennett about her two recent pregnancies, medications for a shoulder injury and a recent shoulder surgery, and the difficulties of juggling motherhood and work.

78. According to Mr. Robert Moxley, a Wyoming attorney and friend of Ms. Bennett's who attended the interrogation on her request, Colonial Johnson insinuated that Ms. Bennett could not handle both motherhood and her duties as an officer of the Wyoming Air National Guard. Mr. Moxley also recalled that when Ms. Bennett asked Colonel Johnson about specific allegations against her, the most specific answer he gave was that the focus of the investigation was the atmosphere in her squadron.

79. Both Mr. Moxley and Ms. Bennett were perplexed by the interrogation and unable to discern the object of the investigation based on Colonel Johnson's questions or his explanation.

80. Along with internal questioning, Ms. Bennett was referred for a psychological evaluation. The psychologist determined Ms. Bennett was ideally suited to serve as an officer.

81.   The investigation and termination paperwork for Ms. Bennett alluded to generic
justifications which lacked a reasonable basis, such as unsubstantiated claims that Ms.
Bennett was a problem drinker and broad statements about her alleged harshness from
various work colleagues. However, the paperwork did not include the findings from
the psychological evaluation to which Ms. Bennett was referred.

82.   On October 5, 2012, despite two appeals made to the NGB to reconsider, Ms.
Bennett's termination from her civilian position was finalized.

83.   At the time of Ms. Bennett's termination, the paperwork to promote her to Lieutenant
Colonel had been completed but was revoked. Because Ms. Bennett had obtained
fifteen years of military service up to that point, she remained committed to reaching
twenty years of service.

84.   Due to her military role, Ms. Bennett was still required to report for drill one weekend
per month. Her superiors began assigning her to empty offices without any job tasks
each time she reported for drill. Ms. Bennett asked if she could transfer to avoid these
scenarios but was firmly told no transfer would be approved.

85.   During the six (6) years Ms. Bennett reported for monthly drills from 2011 through
2017, besides not being assigned any duties, she was often made to sit silently in
rooms full of people, such as the joint operations room and cafeteria. In such cases
others would wonder why she was not performing any duties. Ms. Bennett was
ordered not to tell anyone whether she had been assigned duties or what was going
on.

86. And during this time Ms. Bennett was not permitted to use the restroom or walk anywhere by herself, and instead had to be escorted by a female officer who would wait outside restrooms for her to finish.

87. Regardless of these challenges, Ms. Bennett fulfilled her drill obligations until she obtained qualification for and opted to take her military retirement in 2017.

*Rachel Bennett's EEOC Proceedings*

88. When Ms. Bennett initially attempted to file an EEO claim in 2012, she was denied the right to file and therefore contacted an attorney for assistance in making her claim.

89. In May of 2012, Ms. Bennett successfully filed an EEO complaint alleging that based on sex discrimination and reprisal she was terminated from her technician position with the NGB.

90. In 2013, Ms. Bennett received confirmation that her complaint had been received. The first Administrative Judge ("AJ") assigned to Ms. Bennett's case was located in Phoenix, Arizona but roughly six months into proceedings that AJ left the EEOC. Ms. Bennett's case was subsequently transferred to a second AJ.

91. In the beginning of 2014, Ms. Bennett and her attorney received communication from the second AJ, but subsequently that AJ also terminated communications and the case was once again not brought to completion.

92. Finally, Ms. Bennett's EEO claim was assigned to a third AJ, Judge Nancy Weeks, and Ms. Bennett was forced to begin her case from the beginning for the third time. Ms. Bennett no longer had the funds to maintain an attorney for her case, so that attorney withdrew representation but left Ms. Bennett's EEO case pending.

93.     In 2016, the NGB misunderstood the withdrawal of Ms. Bennett's attorney as a
        withdrawal of her case, and she was informed that because of the withdrawal she
        would be permitted to retire. This meant she would maintain her military position
        until December of 2017.

94.     In November 2018, Ms. Bennett was contacted by AJ Weeks, who asked whether Ms.
        Bennett was still interested in pursuing the case. Ms. Bennett proceeded with her
        EEOC claim.

95.     On June 19, 2019, AJ Weeks issued a default judgment in an Order on Motion for
        Sanctions based on the Guard's repeated failure to respond to and comply with
        requests for discovery. Then a hearing was scheduled to determine the damages Ms.
        Bennett had suffered because of the sex discrimination and reprisal.

96.     On August 22, 2019, the hearing limited to the issue of damages was held. Witnesses
        testified that Ms. Bennett was under intense scrutiny by the NGB and was
        experiencing severe anxiety and PTSD-like symptoms. One of Ms. Bennett's
        colleagues indicated using a nickname for Ms. Bennett in her cell phone to avoid the
        risk that anyone at drill would know she was communicating with Ms. Bennett.

97.     Similarly, the Director of Psychological Health indicated hearing Ms. Bennett called
        "the crazy Rachel Bennett" multiple times and was explicitly warned to be careful
        around and avoid Ms. Bennett. Regarding Ms. Bennett having no assigned duties and
        being ostracized, the psychologist was told Ms. Bennett "had reported something they
        didn't want anybody to know, [and] this was her punishment."

98.     The AJ decided on September 27, 2019, finding Ms. Bennett was owed backpay and
        benefits from October 5, 2012 through December 17, 2017 minus her interim

earnings, $200,000 in non-pecuniary compensatory damages, attorney's fees to each of the three attorneys she had retained, and costs to those attorneys. The NGB was also ordered to post a Title VII notice to employees in all locations involving federal employees for one year.

99.    The initial award was due to Ms. Bennett before Thanksgiving in 2019, but the NGB failed to comply with or reply to the EEOC order.

*Rachel Bennett's Petition for Enforcement*

100.    On December 26, 2019 Ms. Bennett submitted a Petition for Enforcement (PFE) with the Office of Federal Operations (OFO).

101.    On October 5, 2020, the NGB filed a restatement of its position raised repeatedly in the underlying EEOC case that the EEOC had no jurisdiction over the matter and stating the Agency would not comply with any further processing or orders.

102.    On December 29, 2020, Ms. Bennett's award of damages was confirmed by the OFO. The OFO reiterated the NGB's obligation to pay Ms. Bennett her award. However, the NGB still has not complied with this OFO decision or the previous order administered by the EEOC AJ. The EEOC has not taken further action to refer the case externally.

103.    The EEOC's failure to refer these cases to the AG and OSC is unlawful. This failure directly violates Congress' clear command that the EEOC transfer responsibility for an employment discrimination case with a federal agency to the AG and OSC for further justice and enforcement. Therefore, the EEOC is violating its duty in Title VII of the Civil Rights Act of 1964.

104.    The EEOC's failure to refer these cases to the OSC is unlawful. This failure directly

violates Congress' clear command that the EEOC transfer responsibility for an

employment discrimination case with a federal agency to the AG for further justice

and enforcement. Therefore, the EEOC is violating its duty in Title VII of the Civil

Rights Act of 1964.

Other Known Parties Potentially Eligible for the Class Action

105.    The EEOC maintains the information necessary to identify additional Class Action

Members.

106.    The following may be potential Class Action Members:

    a.    *Alene S., 1 Complainant, v. Frank Kendall, Secretary, Department of the Air Force (National Guard Bureau), Agency,* (E.E.O.C. July 7, 2022)(finding DoD improperly dismissed dual-status technician's complaint alleging discrimination based on sex, religion, and reprisal and ordering an investigation);

    b.    *Malinda F., 1 Complainant, v. Barbara M. Barrett, Secretary, Department of the Air Force (National Guard Bureau), Agency,* (E.E.O.C. Dec. 29, 2020)(finding dual-status technician's claims against DoD were not barred and ordering agency to comply with order);

    c.    *Marine V., Complainant, v. Heather A. Wilson, Secretary, Department of the Air Force (National Guard Bureau), Agency,* (E.E.O.C. Apr. 3, 2019)(granting dual-status technician's petition for enforcement where agency discriminated based on sex and reprisal then refused to comply with order);

    d.    *Jerold Y., Complainant, v. Robert M. Speer, Acting Secretary, Department of the Army (National Guard Bureau), Agency,* (E.E.O.C. Apr. 17, 2017)(ordering agency to investigate dual-status technician's complaint of discrimination based on age and reprisal);

    e.    *Chau B., Complainant, v. Robert M. Speer, Acting Secretary, Department of the Army (National Guard Bureau), Agency,* (E.E.O.C. March 23, 2017)(finding agency's discriminatory act occurred during dual-status technician's civilian employment and therefore complaint was within EEOC jurisdiction);

    f.    *Candice B., Complainant, v. Robert M. Speer, Acting Secretary, Department of the Army (National Guard Bureau), Agency,* (E.E.O.C. March 2, 2017)(reversing agency's final decision dismissing complaint because dual-status technicians are covered by Section 717 of Title VII when alleged discriminatory action arises from individual's capacity as a federal civilian employee);

    g.    *Marcia H., Complainant, v. Eric K. Fanning, Secretary, Department of the Army (National Guard Bureau), Agency*, (E.E.O.C. Feb. 17, 2017)(finding agency failed to substantiate dismissal of complaint for discrimination on basis of sex and reprisal);

    h.    *Addie V., Complainant v. Deborah Lee James, Secretary, Department of the Air Force (National Guard Bureau), Agency,* (E.E.O.C. March 1, 2016)(reversing agency's final decision to dismiss formal complaint);

    i.    *Graylon L. Walch, Complainant, v. Pete Geren, Secretary, Department of the Army (Army National Guard Bureau), Agency,* (E.E.O.C. Apr. 9, 2009)(reversing agency's decision to dismiss complaint of discrimination on basis of race and remanding for investigation).

## V.   <u>CLASS ACTION ALLEGATIONS</u>

107.   The named Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. The named Plaintiffs seek to represent the below-described class ("Proposed Class").

108.   The Proposed Class includes individuals, all of whom (1) worked as dual-status technicians by both serving in the United States military and working for military agencies in a civilian role, (2) endured a form of recognized and prohibited discrimination, (3) sought relief through the EEOC, (4) were granted judgment through the EEOC process, and (5) have not received their entitled relief because the EEOC failed to refer the case to the DOJ when it could not enforce its own decision.

109.   The members of the Proposed Class warrant class action treatment because they fulfill requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

110.  The Proposed Class meets the numerosity requirement of Rule 23(a)(1) because the members of the class are so numerous that joinder of all members is impracticable.

111.  The Proposed Class meets the commonality requirement of Rule 23(a)(2) because there are questions of law and fact common to the class. The predominating question to all Plaintiffs is whether the EEOC has a duty EEOC refer the case to the DOJ when it could not enforce its own decision.

112.  The Proposed Class meets the typicality requirement of Rule 23(a)(3) because the claims of the named Plaintiffs are typical of the claims of each of the class members. Plaintiffs and class members are similarly affected by Defendant's wrongful conduct in neglecting its statutory duty as set forth under federal law per Title VII of the Civil Rights Act.

113.  The named Plaintiffs will fairly and adequately protect the interests of the Proposed Class as required by Rule 23(a)(4) because their interests are identical to those of the other members of the class.

114.  Fair and adequate protection of the interests of the class will be further ensured because the named Plaintiffs are represented by competent legal counsel who is experienced in federal court and administration agency practice and the underlying subject matter, is undertaking the representation on a low bono basis, and has adequate resources and commitment to represent the class as a whole. Plaintiffs are committed to continuing to represent the class until their claims for declaratory and permanent injunctive relief are fully adjudicated and until all eligible class members who seek to have EEOC judgment against military agencies properly referred to the DOJ succeed.

115.    The Proposed Class qualifies for certification under Rule 23(b)(1) because prosecuting separate actions would create a risk of inconsistent adjudications across class members. If the individual members of the class brought separate suits to challenge Defendant's policies and practices, Defendants may address the claims of these individuals while ignoring the concerns of remaining class members, thereby exacerbating Defendant's violations of the law.

116.    Resolving this matter as a class action also serves the Court's interest in judicial economy by avoiding overburdening the Courts with individual lawsuits brought by each of the multitude of dual-status employees with valid outstanding EEOC judgments that have not been referred to the DOJ for enforcement.

117.    And the Proposed Class qualifies for class action treatment under Rule 23(b)(2) because Plaintiffs seek declaratory and final injunctive relief. This relief is appropriate for the entire class as Defendant's failure to act applies the whole class.

## VI.    <u>CLAIMS FOR RELIEF</u>

### Claim I: The Administrative Procedure Act (5 U.S.C. § 706(1))
### (Unlawful Withholding and Unreasonable Delay)

118.    Title 5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed."

119.    Title 42 U.S.C. § 2000(e)–5(f)(1) mandates that where the respondent is a "government, governmental agency, or political subdivision," and where the EEOC has been unable to secure a conciliation agreement, the EEOC "**shall refer the case to the Attorney General,** who may bring a civil action against such respondent in the appropriate United States district court." (emphasis added.)

120.    The EEOC's failure to refer these cases to the AG and the DOJ is unlawful and violating the Commission's statutory duty. Such inaction violates Congress's clear command that the EEOC transfer unresolved claims for employment discrimination by a federal agency to the AG.

121.    The EEOC's failure to refer these cases to the OSC is unlawful and violating the Commission's statutory duty. Such inaction violates Congress's clear command that the EEOC transfer unresolved claims for employment discrimination by a federal agency to the AG.

122.    The EEOC's failure to act raises additional barriers preventing dual-status employees who are victims of discrimination from obtaining justice and the relief warranted based on the EEOC's determinations. Thus, Plaintiffs and class members have suffered and continue to suffer irreparable injury compounded by the EEOC's continued failure.

**Claim II: The Administrative Procedure Act (5 U.S.C. § 706(2))
(Arbitrary and Capricious; Short of Statutory Right; Without Observance
of Procedure Required by Law)**

123.    Title 5 U.S.C. § 706(2)(A)–(D) authorizes a court to hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Additionally, a court is authorized to hold unlawful and set aside agency action which falls "short of a statutory right" and fails to observe "procedure required by law."

124.    The EEOC's failure to obtain enforcement of its own decision was arbitrary, capricious, and an abuse of discretion based on the inarticulable basis upon which

they refer some cases to the DOJ and not others, despite plain statutory language that all cases without conciliation agreements "shall be referred to the DOJ."

125.  The EEOC's failure to obtain enforcement of decisions therefore falls short of Plaintiffs statutory rights. The EEOC has an obligation to refer cases to the DOJ and OSC where, as here, the relevant respondent is a government agency refusing to comply with the EEOC's orders.

**Claim III: Title VII of the Civil Rights Act (29 C.F.R. § 1608.1)**
**(Failure to Promote Statutory Purpose and Protected Class**
**Without Relief)**

126.  Title 29 C.F.R. § 1608.1(B) explains that "Congress enacted Title VII in order to improve the economic and social conditions of minorities and women by providing equality of opportunity in the workplace. These conditions were part of a larger pattern of restriction, exclusion, discrimination, segregation, and inferior treatment of minorities and women in many areas of life."

127.  However, the EEOC's failure to obtain enforcement against these agencies and not refer these matters to the DOJ leaves the protected classes without relief, despite claimants receiving valid EEOC judgments against violators of these statutory protections.

128.  Further, the EEOC's failure to obtain enforcement against these agencies and not refer these matters to the OSC leaves the protected classes without relief, despite claimants receiving valid EEOC judgments against violators of these statutory protections.

129.  Courts have proven hesitant to enforce Plaintiffs' claims against military agencies due to the *Feres Doctrine.* In related litigation, despite the OFO concluding that named

Plaintiff, Tina Neville was working with civilian status, the District Court for the

Western District of Texas footnote found that the Plaintiff was acting in her military

capacity and thus the Court declined to enforce the EEOC and OFO decisions against

the military.

130. See ¶ 34.

131. Class Action Plaintiffs are arguing, in good faith, that it is unjust and directly contrary

to the purpose of Title VII of the Civil Rights Act of 1964 to permit military agencies

free reign to discriminate against dual-status employees, in direct violation of

statutory protections, without consequence.

132. The Purpose of Title VII is to ensure this country's core principles of equality and

freedom apply to all inhabitants, regardless of gender or race. Failure to prevent such

discrimination by the single largest employer in the United States blatantly violates

the language let alone the spirit of the Act. Unlawful discrimination against dual-

status employees working toward the welfare of our nation works a grave injustice.

**Claim IV: All Writs Act (28 U.S.C. § 1651)**
**(Failure to refer matters to appropriate enforcement agencies**
**when government body is unable to achieve appropriate remedy.)**

133. As discussed above, the EEOC is either unwilling or unable to provide relief for the

Plaintiffs in adjudicated matters before it;

134. Plaintiffs are unable to obtain redress in federal court;

135. The request for action does not ask the court to create a new federal subject-matter;

136. This request is necessary as the government acknowledged remedies are not being

provided to Plaintiffs as the same government is denying said remedies.

137. This request is made for the Defendant to follow the laws passed by Congress.

138.    The status quo will leave dual-status civilian employees subject to harassment in the federal workforce without any redress.

## VII.    PRAYER FOR RELIEF

139.    Plaintiffs, on behalf of themselves and the class they represent, have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions policies, and practices of the Commission, as alleged herein, unless Plaintiffs and the class they represent are granted the relief they respectfully requested.

WHEREFORE, Plaintiffs Neville and Bennett, on behalf of themselves and on behalf of the Class Members defined herein, respectfully request this Court certify the Class, appoint Ms. Neville and Ms. Bennett as representatives, and designate Plaintiffs' Counsel of Record as Class Counsel, and that it enter judgment in their favor and against Defendant providing the following relief:

A.    Designation of this action as a Class Action on behalf of the collective action members;

B.    Designate Ms. Neville and Ms. Bennett as Class Representatives;

C.    Designate Plaintiffs' Counsel of Record as Class Counsel;

D.    Order the EEOC to identify all outstanding EEOC matters before the United States National Guard (and its federal section portion for each state affiliation) where the United States National Guard (and its federal section portion for each state affiliation) has not complied with EEOC decisions ordering remedial actions for Class Action Complainants. As the respective Complainant's may have anonymity (due to EEOC laws), the EEOC will need to certify not only the case numbers but that they contacted complainant in

order to provide notice to all similarly-situated members of an opt-in class, apprising

them of this action, permitting them to assert timely claims that United States National

Guard (and its federal section portion for each state affiliation) has not complied with the

remedial actions ordered in their respective EEOC claim and the appointment of

Plaintiffs and their counsel to represent the collective action members.

E.  Issue notice to all similarly-situated members of an opt-in class, apprising them of this

    action, permitting them to assert claims in this action,

F.  **Declare that the EEOC has a statutory duty to refer cases to the Attorney General**

    **as necessary when the U.S. National Guard Bureau is not complying with remedial**

    **orders;**

    a.  Require Agencies to award outstanding obligations to Plaintiffs as granted by

        EEOC determinations;

G.  **Declare that the EEOC has a statutory duty to refer cases to the OSC as necessary**

    **when the U.S. National Guard Bureau is not complying with remedial orders;**

    a.  Require Agencies to award outstanding obligations to Plaintiffs as granted by

        EEOC determinations;

H.  Award Plaintiffs attorneys' fees and costs in bringing and maintaining this action: This

    incudes but not limited to EAJA fees and costs; amounts calculated by combining the

    amount granted in the various EEOC proceedings plus any incurred costs in this

    litigation; and any other attorney fees and costs this Court may find appropriate.

I.  Grant Plaintiffs, Class Members, and Plaintiff's attorney such other and further relief as

    the Court may deem necessary and appropriate.

Respectfully submitted,

*/s/ Michael Eisenberg*

Michael Eisenberg (D.C. Bar No. [486251)
Law Office of Michael Eisenberg
700 12th Street, NW STE 700
Washington, DC 20005
(202) 558-6371
Michael@Eisenberg-Lawoffice.com