# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TINA A. NEVILLE, *et al.*, | : | | |
| | : | | |
| *Plaintiffs*, | : | Civil Action No.: | 22-3246 (RC) |
| | : | | |
| v. | : | Re Document No.: | 14, 22 |
| | : | | |
| CHARLOTTE A. BURROWS, Chair, Equal | : | | |
| Employment Opportunity Commission, | : | | |
| | : | | |
| *Defendant*. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM

## I.  INTRODUCTION

Plaintiffs Tina Neville and Rachel Bennett bring a putative class action complaint against Defendant Charlotte A. Burrows, in her official capacity as Chair of the Equal Employment Opportunity Commission ("EEOC").  Complaint, ECF No. 3.[1]  Plaintiffs contend that the EEOC has failed to enforce, or refer for enforcement, judgments that were entered in their favor against the United States Air Force and National Guard Bureau.  Thus, they seek to compel the EEOC to refer their matters to either the United States Attorney General or the United States Office of Special Counsel for enforcement through a civil action.  Plaintiffs initially ground their claims in the Administrative Procedure Act ("APA"), alternatively seeking a writ from the Court.  The EEOC moves to dismiss, arguing that this Court lacks subject matter jurisdiction over all counts. *See* Def.'s Mot. to Dismiss ("Mot. Dismiss"), ECF No. 14.  For the reasons stated below, the Court grants the motion to dismiss.

---

[1] This version of the complaint was filed as errata.

## II.  BACKGROUND

"The National Guard Technician Act . . . provides that, as a condition of civilian employment, technicians must, *inter alia,* be members of the National Guard and hold the military grade specified by the Secretary concerned."  *Ass'n of Civilian Technicians v. Fed. Lab. Rels. Auth.*, 250 F.3d 778, 780 (D.C. Cir. 2001).  Thus, these "dual-status" technicians serve simultaneously as a member of the Guard and as civilian employees.  *See* 32 U.S.C. § 709 (authorizing dual-status appointments).  "Except when participating as National Guard members in part-time drills, training, or active-duty deployment, *see* 32 U.S.C. §§ 502(a) and 709(g)(2), dual-status technicians work full time in a civilian capacity and receive federal civil-service pay."  *Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth*., 598 U.S. 449, 453 (2023) (holding that dual-status technicians are civilian employees in the federal civil service and subject to the authority of the Federal Labor Relations Authority).  They "must . . . 'maintain membership in the [National Guard]' and wear a uniform while working."  *Id.* (quoting 10 U.S.C. § 10216(a)(1)(B)).  A dual-status Military Technician who loses her affiliation with the Guard will also lose her civilian position within 30 days.  Compl. ¶ 3.

### A.  Plaintiff Tina Neville

Ms. Neville was a dual-status Military Technician in the Texas Air National Guard, working as a military aircraft mechanic assigned to Lackland Air Force Base, San Antonio, Texas.  *Id*. ¶¶ 10 & 36.  Ms. Neville held the rank of Master Sergeant.  *See Neville v. Donley*, EEOC Appeal No. 0720110023, 2013 WL 5295937, at *1 (Aug. 1, 2013).[2]

---

[2] This case is also attached as an exhibit to the EEOC's motion to dismiss.  *See* Ex. 1, ECF No. 14-2.

Ms. Neville alleges that in March 2006, she developed complications from a hysterectomy, but her supervisor disregarded her physician's orders that she be put on light duty.[3]  Compl. ¶¶ 38–39.  In June 2007, Ms. Neville suffered sharp back and knee pain while attempting to move a twenty-pound ladder.  *Id.* ¶ 40.  Around the same time, Ms. Neville's supervisor downgraded her performance rating from the previous year's rating of "outstanding," but kept the rest of the written evaluation the same.  *Id.* ¶ 41.

On November 13, 2007, Ms. Neville filed an EEO discrimination complaint alleging that the Texas Guard unlawfully discriminated and retaliated against her based on her sex and disability.[4]  On January 26, 2011, an EEOC Administrative Judge found that Ms. Neville had suffered discrimination based on her sex.  *Id.* ¶ 42; *Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937, at *2.  The Administrative Judge ordered several forms of relief including backpay, compensatory damages, an amendment to Ms. Neville's performance report, and disciplinary action against Ms. Neville's supervisor.  Compl. ¶ 45; *Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937, at *1.

Thereafter, the Adjutant General of the Texas Guard informed the National Guard Bureau that he would not implement the Administrative Judge's decision based on jurisdictional grounds.  Compl. ¶ 46.  The U.S. Air Force and National Guard Bureau then issued a final agency decision rejecting the Administrative Judge's decision, *see id.,* and filed an appeal with

---

[3] As required at the motion to dismiss stage, all allegations are assumed as true.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Regardless, none of the facts relating to Plaintiffs' alleged discrimination are at issue here, and the allegations are consistent with the EEOC's findings.  *See Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937, at *1–3.

[4] Specifically, Ms. Neville's complaint was filed pursuant to § 717(a)2 of Title VII, 42 U.S.C. § 2000e-16(a), and processed according to federal sector complaint processing procedures contained in 29 C.F.R. § 1614.  Compl. ¶ 42, *Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937, at *1.

EEOC's Office of Federal Operations, arguing that the EEOC lacked subject matter jurisdiction over Ms. Neville's complaint because the personnel actions arose from the military aspects of Ms. Neville's dual-status technician service.  *See Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937, at *3.

On August 1, 2013, the EEOC rejected the Air Force's jurisdictional arguments, finding that Ms. Neville suffered discrimination in her civilian capacity, and issued a decision ordering relief.  *See id.* at *6–10.  The National Guard Bureau did not comply with the EEOC's decision. Compl. ¶ 51.  Instead, the Texas Adjutant General sent a letter explaining that he would not enforce the order, and again articulated his view that under his military authority pursuant to 32 U.S.C. § 709, Ms. Neville's Title VII complaint concerned the military aspects of her duties.  *Id.* He stated that he would order a military investigation of the allegations under the National Guard's Military Discrimination Complaint System.  *Id.*

On December 17, 2013, Ms. Neville filed a petition with the Office of Federal Operations asking for the EEOC to enforce its order.[5]  *Id.* ¶ 52.  On July 1, 2015, she petitioned for a Writ of Mandamus in the United States District Court for the District of Columbia, seeking an order that the EEOC respond to her petition for enforcement or alternatively, an order that the Department of Defense, the Air Force, and the National Guard Bureau direct the Texas Guard and the Texas Adjutant General to comply with the EEOC order.  *Id.* ¶¶ 53, 59; *see also Neville v. Yang, et. al.* No. 15-cv-1032-KBJ, 2016 WL 11050573, at *1 (D.D.C. 2015).

On July 2, 2015, the day after Ms. Neville's petition for Writ of Mandamus, the EEOC issued a decision in response to her petition for enforcement.  Compl. ¶ 53.  The EEOC again

---

[5] "A complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction.  The petition shall be submitted to the Office of Federal Operations."  29 C.F.R. § 1614.503(a).

affirmed Ms. Neville's entitlement to damages and other relief, and further declared that the

Texas Guard and Texas Adjutant General are "agents" of the executive branch of the federal

government and ordered them to comply with its order. *Id.* They did not comply. *Id.* ¶ 56. On

March 18, 2016, Ms. Neville filed an Amended Petition for Writ of Mandamus, seeking

enforcement of the EEOC's judgment. Compl. ¶ 60; Amended Petition for Writ of Mandamus,

*Neville v. Yang, et al.*, No. 15-cv-1032, ECF No 32. Finding that venue was improper in the

District of Columbia, on November 10, 2016, the District Court transferred Ms. Neville's

Amended Petition to the Western District of Texas. Compl. ¶ 61; *Neville v. Yang, et al.*, No. 15-

cv-1032 (KBJ), Memorandum Opinion and Order Transferring Case (D.D.C. Nov 23, 2016),

ECF No. 50.

On March 29, 2018, the Western District of Texas granted the EEOC's motion to dismiss

and alternative motion for summary judgment. Compl. ¶ 62; *Neville v. Lipnic*, No. 5:16-CV-

1231-DAE, 2018 WL 8131053, at *1 (W.D. Tex. Mar. 29, 2018), *aff'd*, 778 F. App'x 280 (5th

Cir. 2019). The Court held that

> [t]he EEOC's obligation to 'attempt to obtain compliance' with the 2013 [EEOC] Decision
> and 2015 P[etition] F[or] E[nforcement] Decision ceased when Neville filed this suit for
> mandamus . . . The filing of a civil action, either for enforcement or on the underlying
> discrimination claim, terminates all EEOC action on the complaint, including any petition
> for enforcement.

> *Id.* at *7 (citations omitted). Ms. Neville appealed to the Fifth Circuit. Compl. ¶ 63. The

Fifth Circuit affirmed. *Neville v. Lipnic,* 778 F. App'x 280, 288 (5th Cir. 2019). Ms. Neville

then petitioned the Supreme Court for a writ of certiorari, which petition was denied on April 6,

2020. Compl. ¶ 64. Ms. Neville still has not received the relief ordered by the EEOC.

## B. Plaintiff Rachel Bennett

Ms. Bennett was also a dual-status military technician, serving in the Wyoming National Guard.  Compl. ¶ 11.  Ms. Bennett was the Director of Personnel/Supervisory Human Resources until October 5, 2012.  *See Malinda F. [Rachel Bennett] v. Barrett*, EEOC Appeal No. 2020002487, 2020 WL 8018634 (Dec. 29, 2020), at *1.[6]  She held the rank of Major.  *See id.*

Ms. Bennett alleges that in February 2012, she was told by multiple female subordinates that they were concerned about "sexual harassment and superior officers trading advancements for illicit sexual favors."  Compl. ¶ 69.  Ms. Bennett raised these issues about inappropriate behavior by senior officers with her supervisor, and after making this report, she noticed that her squadron became hostile toward her.  *Id.* ¶¶ 71–72.  She was removed from all activities with her squadron and termination proceedings began, during which she was interrogated about her pregnancies and children.  *Id.* ¶¶ 73, 78.  Ms. Bennett was terminated from her civil position on October 5, 2012 but remained in her military role until her retirement in December 2017.  *Id.* ¶¶ 83–87.  During her continued service in the military, she attended monthly drills but was not given any duties, and she also faced restricted freedom of movement on base.  *Id.* ¶¶ 85–86.

In May 2012, Ms. Bennett filed an EEO complaint alleging that the Wyoming Guard discriminated against her based on her sex and retaliated against her because she had reported possible misconduct.  *Id.* ¶ 89.  After several years where Ms. Bennett's claim bounced between three different EEOC Administrative Judges, on June 19, 2019, an EEOC Administrative Judge entered a default judgment in Bennett's favor.  *Id.* ¶ 95; *Malinda F.,* EEOC Appeal No.

---

[6] The opinion explains that "[t]his case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website."  EEOC Appeal No. 2020002487, 2020 WL 8018634 at *1.  In addition, as with Ms. Neville's appeal, this case is attached as an exhibit to the EEOC's motion to dismiss. *See* Ex. 2, ECF No. 14-3.

2020002487, 2020 WL 8018634 at *2.  The Administrative Judge ordered relief including compensatory damages, attorney's fees, and a requirement that the National Guard Bureau post a Title VII notice in all locations involving federal employees for one year.  Compl. ¶ 98; *Malinda F.,* EEOC Appeal No. 2020002487, 2020 WL 8018634 at *2.

Much like with Ms. Neville, the Air Force and National Guard Bureau stated that they would not comply with the decision because the challenged actions arose from the military aspects of Ms. Bennett's service, and so the EEOC lacked subject matter jurisdiction.  *Id.*; Compl. ¶ 101.  On December 26, 2019, Ms. Bennett filed a petition with the EEOC's Office of Federal Operations seeking enforcement of the order.  Compl. ¶ 100; *Malinda F.,* EEOC Appeal No. 2020002487, 2020 WL 8018634 at *1.  On December 29, 2020, the EEOC ordered the Air Force and National Guard Bureau to implement the Administrative Judge's ordered relief.  Compl. ¶ 102; *Malinda F.,* EEOC Appeal No. 2020002487, 2020 WL 8018634 at *12.  Ms. Bennett still has not received the relief ordered by the EEOC.

### C.  Procedural History

On October 24, 2022, Ms. Neville and Ms. Bennett, on behalf of themselves and all others who are allegedly similarly situated, filed the instant class action for declaratory and injunctive relief.  *See* Compl.  Plaintiffs bring four counts that center on an argument that the EEOC must refer their cases to the Attorney General or the Office of Special Counsel for enforcement.  *See id.* ¶¶ 119–139.  In Count I, Plaintiffs ask the Court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* ¶ 119 (quoting 5 U.S.C. § 706(1)), by ordering the EEOC to refer their cases to the Attorney General and/or the Office of Special Counsel.  In Count II, Plaintiffs similarly request that the Court "hold unlawful and set aside" EEOC's failure to obtain enforcement of its decision as "arbitrary and capricious" and "an abuse

of discretion" based on the allegation that EEOC does not articulate why they refer some cases and not others. *Id.* ¶¶ 123–124 (quoting 5 U.S.C. § 706(2)(A)–(D)). Count III, purportedly made under Title VII, charges the EEOC with failing to promote Title VII's statutory purpose by leaving Plaintiffs without relief. *Id.* ¶¶ 126–132. Finally, Count IV invokes the "All Writs Act," 28 U.S.C. § 1651, apparently seeking a mandamus order requiring the EEOC to refer their cases. *Id.* ¶¶ 133–138.

On February 17, 2023, the EEOC moved to dismiss for lack of subject matter jurisdiction. *See* Mot. Dismiss. Plaintiffs opposed the motion. *See* Pls. Mem. in Opp'n to Mot. to Dismiss ("Pls. Opp'n"), ECF No. 18; *see also* Def.'s Reply Supp. Mot. to Dismiss ("Reply"), ECF No. 19. In addition, Plaintiffs filed a motion to certify a class, which the Court denied without prejudice subject to refiling if the motion to dismiss is denied. *See* Mot. to Certify Class, ECF No. 11; Min. Ord., Feb. 24, 2023.

Many months after the conclusion of briefing on the motion to dismiss, on January 16, 2024, Plaintiffs moved for leave to file a five page supplemental memorandum and several attached exhibits. Pls. Mot. Leave to File Supp. Mem., ECF No. 22; Pls. Supp. Mem. Opp. Def.'s Mot. Dismiss ("Pls. Supp. Mem."), ECF No. 22-1. Defendant opposed the motion, characterizing it as a surreply. Def.'s Mem. Opp. Pls. Mot. Leave to File Supp. Mem., ECF No. 23. The Court now considers the motion to dismiss and the motion for leave to file. [7]

---

[7] Although Plaintiffs filed a motion for oral argument concerning the motion to dismiss, *see* Pls. Motion for Oral Arguments, ECF No. 21, the allowance of oral hearings is "within the discretion of the Court." LCvR 7(f). Because the parties' written briefings are sufficient to resolve the instant motion, the Court declines to conduct an oral hearing and denies the motion for oral argument.

### III.  LEGAL STANDARD

1.  Administrative Procedure Act and the Mandamus Act

Under the APA, persons adversely affected by agency action are entitled to judicial review.  5 U.S.C. § 702.  Agency action includes the failure to act, *id.* § 551(13), and a court may sometimes "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).  However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 64 (2004).  "[A] complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)."  *Sierra Club v. Jackson,* 648 F.3d 848, 854 (D.C. Cir. 2011).

Nevertheless, the EEOC argues that the Court lacks subject matter jurisdiction over Plaintiffs' APA claims, and Plaintiffs do not contest this characterization of the issue.  "But the D.C. Circuit has said failure to allege a viable APA claim is a merits issue, not a jurisdictional one."  *Collier v. Kendall*, No. 1:21-cv-2781, 2022 WL 21295819, at *1 (D.D.C. May 19, 2022) (analyzing motion to dismiss under Rule 12(b)(1) instead of Rule 12(b)(6) as defendant argued).  In practice, the distinction as to whether the motion to dismiss is properly analyzed under Rule 12(b)(1) or Rule 12(b)(6) "matters insofar as it affects the kinds of information the Court may consider when resolving [the motion.]" *Pate v. Fed. Bureau of Prisons*, No. 21-cv-202, 2021 WL 5038636, at *2 (D.D.C. Oct. 29, 2021*), aff'd sub nom. Pate v. Fed. Bureau of Prisons, Dir. of BOP*, No. 21-5285, 2023 WL 2436223 (D.C. Cir. Mar. 6, 2023).  Unlike in *Collier*, 2022 WL 21295819, at *1, where the defendant sought to introduce several declarations that could only be considered under Rule 12(b)(1), the EEOC does not ask the Court to consider any information

that it could not under Rule 12(b)(6).  With the distinction between the appropriate rule making little difference, the Court follows the D.C. Circuit's command and construes the motion to dismiss the APA counts under Rule 12(b)(6).

Plaintiffs also bring Count IV apparently seeking a writ of mandamus, although the precise nature of that claim is disputed, *see* infra at 20.  A mandamus claim should be analyzed under Rule 12(b)(1), because unless the threshold requirements for mandamus are met, "a court must dismiss the case for lack of jurisdiction."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Again, the Court does not see these different standards as inconsistent for the purposes of resolving the instant motion.[8]  Still, for the purpose of clarity, the Court explains the high-level differences between motions under Rule 12(b)(1) and Rule 12(b)(6).

### 2.  Rule 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff has the burden of proving that the Court has subject-matter jurisdiction to hear the claims. Fed. R. Civ. P. 12(b)(1); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Id.* at 13–14 (citations and internal quotation marks omitted).  Thus, although not relevant here, under Rule 12(b)(1) a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic

---

[8] A previous decision in this district, *Pate,* 2021 WL 5038636 at *2–3 noted that it is somewhat odd if APA claims are decided under Rule 12(b)(6) while largely comparable mandamus claims are decided under Rule 12(b)(1).  *Pate* did not resolve the issue because the plaintiff clearly lacked Article III standing in any event.  *Id.* at *3.

information, and ultimately weigh the conflicting evidence.  *See Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### 3.  Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.*  Similarly, there is no obligation to accept plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

Finally, the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Those matters include "publicly available materials and information, such as ... information available on government websites."

*Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, No. 19-cv-3629, 2021 WL 1198047, at *2 n.2

(D.D.C. Mar. 30, 2021).

## IV.  ANALYSIS

### A.  Leave to File the Supplemental Memorandum is Denied

Before resolving Defendant's motion to dismiss, the Court confronts Plaintiffs'

motion for leave to file a supplemental memorandum.  Rather than responding to the

arguments in Defendant's reply, the supplemental memorandum seeks to introduce "new

evidence," in the form of emails, "further showing Defendant acted in an arbitrary and

capricious manner by failing to obtain compliance from the National Guard Bureau."  Pls.

Supp. Mem. at 1.

"A court has the discretion to grant leave to file an additional brief, known as a

surreply."  *Bayala v. United States Dep't of Homeland Sec.*, 246 F. Supp. 3d 16, 20 (D.D.C.

2017).  A surreply may be appropriate when the "proposed surreply would be helpful to the

resolution of the pending motion" and the other party would not be "unduly prejudiced."

*Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL

6759550 (D.C. Cir. Dec. 8, 2011).  But "[w]hen arguments raised for the first time in reply fall

'within the scope of the matters [the nonmovant] raised in opposition,' and the reply 'does not

expand the scope of the issues presented, leave to file a surreply will rarely be appropriate.'"

*Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 188 (D.D.C. 2012) (quoting *Crummey  v. Soc.*

*Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, 2012 WL 556317 (D.C. Cir. Feb. 6,

2012)).

The Court is unpersuaded that the proposed supplemental memorandum would be helpful

to the resolution of the pending motion.  The briefing on the motion focuses on statutory and

jurisdictional questions, while the supplemental memorandum pertains to factual issues relating to Defendant's alleged failure to act in obtaining agency compliance with its orders.  Plaintiffs have also not shown that this evidence is newly discovered.  Ms. Bennett was included on all of the emails, and they all predate the filing of Plaintiffs' opposition on March 17, 2023, mostly by many months.  *See* ECF No. 22-2 (emails from November 24, 2021 through December 7, 2021); ECF No. 22-3 (email from February 10, 2022); ECF No. 22-4 (emails from November 30, 2021 through February 4, 2022); ECF No. 22-5 (emails from February 15, 2022 through April 12, 2022); ECF No. 22-6 (emails from February 15, 2022 through June 17, 2022); ECF No. 22-7 (emails from March 7, 2023 through March 9, 2023).  Moreover, "[t]o the extent Plaintiff[s] [are] seeking to raise new factual allegations based on this 'recently discovered new evidence', the Court notes that a sur-reply (like an opposition to a motion to dismiss) is an inappropriate vehicle to raise such new allegations." *Nichols v. Vilsack*, No. 13-cv-1502 (CKK), 2014 WL 12941692, at *2 (D.D.C. May 29, 2014) (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010)).  The Court will therefore deny Plaintiffs' motion for leave to file the supplemental memorandum.  Having made that determination, the Court will now turn to the motion to dismiss.

## B.  EEOC Has No Clear Duty to Act

Plaintiffs invoke Sections 706(1) and 706(2) of the APA in their argument that the EEOC has a duty to refer their case to the Attorney General under § 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and to the Office of Special Counsel under 29 C.F.R. § 1614.503(f).  Compl. ¶¶ 118–139.  EEOC responds that it does not have a clear duty to refer cases, instead arguing that referral to the Attorney General is outside its statutory authority, and referral to the Office of Special Counsel is discretionary.  Mot. Dismiss at 9, 13.  The Court agrees with EEOC.

1. EEOC Has No Duty to Act by Enforcing its Orders

To the extent that Plaintiffs contend that the EEOC itself has a duty to act by enforcing its orders, *see* Compl. ¶ 1, the Court rejects this argument.[9]  In the order transferring Ms. Neville's previous action in this district, the court determined that she "ha[d] not alleged any facts, nor is the Court aware of any, which demonstrate that the EEOC had a clear duty to enforce its own decisions," and it also found that "applicable [EEOC] regulations indicate otherwise." *Neville v. Yang et al.*, No. 15-cv-1032 (KBJ), Memorandum Opinion and Order Transferring Case (D.D.C. Nov 10, 2016), ECF No. 50, at 9 n.3 (citing 29 C.F.R. § 1614.503(g)).  That court did acknowledge that the EEOC has a duty to inform complainants *of "the right to file a civil action for enforcement of the decision* pursuant to Title VII . . . and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act [] and the mandamus statute[.]"[10]  *Id.* (quoting 29 C.F.R. § 1614.503(g)).

This Court agrees with the prior court's assessment that the EEOC's duty to act is merely informational.  Plaintiffs rely on an EEOC regulation that specifies that "the [EEOC's] Office of Federal Operations shall take all necessary action to ascertain whether the Agency is implementing the decision of the Commission.  If the agency is found not to be in compliance with the decision, efforts shall be undertaken to obtain compliance."  29 C.F.R. § 1614.503(b).

---

[9] It is not exactly clear whether Plaintiffs seek any type of relief commanding the EEOC itself to enforce its orders, but the EEOC offers an argument on this point, and the complaint could be fairly read to touch upon this issue. *See* Mot. Dismiss at 8; *see also* Compl. ¶ 1 (saying that Plaintiffs "bring this action … to address the failure of Defendant … to enforce its order prohibiting and punishing employment discrimination by United States military agencies").  In addition, discussing the issue helps to explain how the EEOC's regulatory framework handles situations where an agency is not complying with an order.

[10] The EEOC complied with this duty in this case.  *See Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937 at *12; *Malinda F.,* EEOC Appeal No. 2020002487, 2020 WL 8018634 at *12–13.

True, "[t]he traditional, commonly repeated rule is that shall is mandatory and may is permissive...." *See Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012)).  But the regulation does not specify that the EEOC's "efforts" must include enforcement and remains vague on what actions exactly "should be undertaken."

In fact, the other provisions in 29 C.F.R. § 1614.503 indicate that the EEOC *cannot* enforce decisions against an agency on its own.  The regulation envisions that when the "Director, Office of Federal Operations, is unable to obtain satisfactory compliance with the final decision, the Director shall submit appropriate findings and recommendations for enforcement to the Commission, or, as directed by the Commission, refer the matter to another appropriate agency."  29 C.F.R. § 1614.5(d).  In other words, the Office of Federal Operations cannot enforce the decision but only offer a recommendation for enforcement to the Commission.  In turn, the Commission "may" issue a notice to the noncompliant federal agency to "request the head of the agency or a representative to appear before the Commission or to respond to the notice in writing with adequate evidence of compliance or with compelling reasons for non-compliance."  *Id.* § 1614.5(e).  And, as will be discussed in greater detail below, "[w]here appropriate and pursuant to the terms of a memorandum of understanding, the Commission may refer the matter to the Office of Special Counsel for enforcement action."  *Id.* § 1614.5(f).  This regulatory scheme gives the EEOC tools to move an agency into compliance but does not give the EEOC its own enforcement power, nor does it obligate the EEOC to otherwise obtain enforcement.

   2.  EEOC Has No Authority to Refer Plaintiffs' Cases to the Attorney General

Title VII has two types of enforcement mechanisms: one for federal employees, and one for private sector and state and local government employees.  *See generally* §§ 701, 703, and 704

of Title VII, 42 U.S.C. §§ 2000e, 2000e-2, and 2000e-3.  Federal employees pursue their

complaints according to the processing procedures of 29 C.F.R. Part 1614 and file their

complaints with their employer agency.  *See* 29 C.F.R. § 106(a).  Non-federal employees pursue

employment discrimination complaints under the procedures set forth in 29 C.F.R. Part 1601 and

file their "charges" of discrimination directly with the EEOC.  *See* 42 U.S.C. § 2000e-5(b); 29

C.R.F. §1601.8.  And as a reflection of this statutory bifurcation, the term "employer," as defined

in § 701(b) of Title VII, 42 U.S.C. § 2000e(b), excludes the United States and its wholly owned

corporations.

Plaintiffs advance an argument that "[a] comprehensive review of the statutory scheme

requires the EEOC to refer [their] matters to the Department of Justice."  Pls. Opp'n at 5.  42

U.S.C. § 2000e-16(d) provides that "[t]he provisions of section 2000e-5(f) through (k) of this

title, as applicable, shall govern civil actions brought hereunder, and the same interest to

compensate for delay in payment shall be available as in cases involving nonpublic parties."

Meanwhile, Section 706(f)(1) of Title VII states that

> [i]n the case of a respondent which is a *government, governmental agency, or political subdivision*, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

In Plaintiff's view, this statutory language applies to them because under Section 717(c) of

Title VII, federal employees "may file a civil action as provided in [Section 706]" wherein "the

provisions of section 706(f) through (k), as applicable, shall govern civil actions brought

hereunder."  42 U.S.C. § 2000e-16(c–d).  As the Court interprets Plaintiffs' argument, they say

this language must mean that "governmental agency", *id.* § 2000e-5(f)(1), includes federal

agencies.  If so, it would follow that because the Air Force and National Guard Bureau have not agreed to implement the EEOC's orders in Plaintiffs' cases, the EEOC must refer them to the Attorney General for a possible civil action.

However, the Supreme Court long ago clarified that the phrase "as applicable" in 42 U.S.C. § 2000e-16(d) is intended to "reflect the fact that certain provisions in § 706(f) through (k) pertain to aspects of the Title VII enforcement scheme that have no possible relevance to judicial proceedings involving federal employees." *Chandler v. Roudebush*, 425 U.S. 840, 846 (1976).[11] Indeed, Section 706(f)(1) sets forth "specific procedures and guidelines to be followed in private-sector 'civil actions'" that "could not possibly apply to civil actions involving federal employees." *Id.* at 846–47.  The Court emphasized that provisions "allowing suits and permissive intervention by the EEOC or the Attorney General, could have no possible application to 'civil actions' under [Section] 717(c), because the individual federal employee or job applicant is the only party who can institute and maintain a 'civil action' under that subsection." *Id.* at 847.  Crucially, the language "government, governmental agency or political subdivision" that Plaintiffs now seize upon was expressly rephrased by the Supreme Court as "state government, agency, or political subdivision," reflecting that it did not cover employees of the federal government. *Id.*

Thus, to say that Section 706(f)(1)'s language governing referral to the Attorney General applies to federal employees would contradict the text and structure of Title VII as well as Supreme Court precedent.  That matters here because Plaintiffs filed their complaints as federal employees under § 717 of Title VII, consistent with the EEOC's position that dual-status technicians are covered by Title VII when the alleged discriminatory conduct occurs in the course of their civilian

---

[11] *Chandler,* 425 U.S. at 846 did not revolve around the same issues as the current case but instead held that under Title VII, federal employees have the same right to a trial *de novo* as private sector or state government employees.

employment.  *See Neville,* EEOC Appeal No. 0720110023, 2013 WL 5295937 at *3; *Malinda F.,* EEOC Appeal No. 2020002487, 2020 WL 8018634 at *5.  As discussed above, Plaintiffs eventually exercised their right to appeal to the Office of Federal Operations, *see* 29 C.F.R. § 1614.401(a), and to file a petition for enforcement, *see id.* § 1614.503(a).  Therefore, because Plaintiffs do not fall within the limited category of employees of state governments, agencies, or political subdivisions, the EEOC has no duty, and for that matter, no authority to refer Plaintiffs' cases to the Attorney General.

   3.  EEOC Has No Clear Duty to Refer Matters to the Office of Special Counsel

   Although Title VII does not mention the Office of Special Counsel, EEOC regulations specify that "[w]here appropriate and pursuant to the terms of a memorandum of understanding, the Commission may refer the matter to the Office of Special Counsel for enforcement action." 29 C.F.R. § 1614.503(f).  While this language – using the words "where appropriate" and "may" – would make referrals discretionary, the memorandum of understanding provides that EEOC "*shall* refer to [the Office of Special Counsel] for potential enforcement action cases in which the agency fails to comply with the order of the EEOC and any other case or matter that the Commission believes warrants enforcement by OSC."  Ex. 3, Memorandum of Understanding Between U.S. Office of Special Counsel and Equal Employment Opportunity Commission ("MoU"), ¶ 1 (emphasis added), ECF No. 14-4.

   "[The Circuit has emphasized that even though 'shall' is usually interpreted as the language of command, it is improper to consider those words in isolation, without also consider[ing] the language and structure of the [provision]." *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 197 (D.D.C. 2020) (quoting *Sierra Club,* 648 F.3d at 856) (internal quotations omitted)).  After using the word "shall," the MoU groups "cases in which the agency

fails to comply with the order of the EEOC" with "any *other* case or matter that the Commission *believes* warrants enforcement by OSC."  MoU ¶ 1 (both emphases added).  This context strongly suggests that this usage of "shall" retains discretion for the EEOC to refer only the cases that it "believes" should be enforced by the Office of Special Counsel.  Further, if the MoU makes referral mandatory, that would make it inconsistent with 29 C.F.R. § 1614.503(f)'s noncompulsory terminology.  A better reading of the regulation and MoU together is that the MoU provides principles to govern how EEOC "may" refer cases "when appropriate," *id.,* rather than supplanting the regulation's discretionary language with a mandatory duty.

Regardless, even if the EEOC generally had a duty to refer cases to the Office of Special Counsel when an agency fails to comply, such a referral would be futile here because the Office of Special Counsel does not have jurisdiction over Plaintiffs' cases.  *See* Off. of Special Counsel, *Who Can File a Prohibited Personnel Practices Complaint?*, https://osc.gov/Services/Pages/PPP-WhoCanFile.aspx (last visited Feb. 13, 2024) ("If you are an employee of any of the following, the Office of Special Counsel cannot obtain corrective action on your behalf: . . . National Guard, Air Reserve Technicians, and Army Reserve Technicians, except personnel whose civilian positions have been converted to Title 5").  Plaintiffs do not contest this jurisdictional deficiency but argue that the EEOC nonetheless has a duty to refer cases to an office that cannot pursue them.  *See* Pls. Opp'n at 10 ("Granted, the OSC may not have jurisdiction to act; but that is a decision for the OSC to determine, not the EEOC.").  It is not plausible that the EEOC would have a mandatory duty to make a meaningless referral.  *See* 29 C.F.R. § 1614.503(f) (specifying that the EEOC shall make referrals "when appropriate").

Thus, this Court finds that Plaintiffs have failed to state a claim in Counts I and II, and these counts are dismissed.[12]

### C.  The Court Has No Jurisdiction to Issue a Writ

In Count IV as pleaded, Plaintiffs make a claim under the All Writs Act.  Compl. ¶¶ 133–138.  The All Writs Act "empowers this court to 'issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law.'"  *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022) (quoting 28 U.S.C. § 1651(a)).  Relevant to this case, "[t]he All Writs Act does not grant jurisdiction to issue a writ of mandamus.  Instead, it authorizes the issuance of a writ of mandamus in aid of jurisdiction this court already has or will have as a result of issuing the writ."  *Id.* (quoting *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004)).  Rather, "[w]hen an agency unlawfully withholds or unreasonably delays an action this court would have jurisdiction to review, the All Writs Act empowers [the Court] to issue a writ compelling the agency to complete the action so we can exercise our jurisdiction to review it."  *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 75–76 (D.C. Cir. 1984)).  In other words, the All Writs Act is a non-sequitur to the present case.  Plaintiffs are not seeking a writ so that the Court may review an agency action, but a writ to compel action that they desire.

Plaintiffs may not amend their complaint in their opposition to a motion to dismiss.  *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 43 (D.D.C. 2022).  Undeterred, in response to the EEOC pointing out the deficiencies in their All Writs Act claim, Plaintiffs' counsel insist that

---

[12] In addition, Count II says that the EEOC's failure to obtain enforcement in Plaintiffs' cases is arbitrary and capricious "based on the inarticulable basis upon which they refer some cases to the DOJ and not others."  Compl. ¶ 124.  The parties do not say much about Count II, but the basis on which the EEOC will not refer Plaintiffs' cases is clear: they are either without statutory authority to refer, or they would be referring to an office with no jurisdiction over Plaintiffs' cases.

they are not making an All Writs Act claim but instead are "specifically pleading with this court

to compel an Agency officer or Agency to act" through a writ of mandamus under 28 U.S.C.

§1361, also known as the Mandamus Act.  Pls. Opp'n at 12.  They add that "if necessary,

Plaintiffs' counsel will amend their Complaint to specifically cite 28 U.S.C. § 1361 to cure any

potential defects."  *Id.* at 12 n.5.

Such an amendment is unnecessary and would be futile because Plaintiffs' claim also

fails if viewed under the Mandamus Act.  Under 28 U.S.C. § 1361, "[a] court may grant

mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear

duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Muthana v.

Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d

57, 62 (D.C. Cir. 2010)), *cert. denied sub nom. Muthana v. Blinken*, 142 S. Ct. 757 (2022).

"These three threshold requirements are jurisdictional; unless all are met, a court must dismiss

the case for lack of jurisdiction."  *Id.* (quoting *Am. Hosp. Ass'n,* 812 F.3d at 189).  That means

"mandamus jurisdiction under § 1361 merges with the merits."  *Id.* (quoting *Lovitky v. Trump*,

949 F.3d 753, 759 (D.C. Cir. 2020)).

Plaintiffs fail at least one of the requirements necessary for mandamus.  The Court has no

mandamus jurisdiction because Plaintiffs have not established any clear duty for the EEOC to act

by referring the case to the Attorney General or the Office of Special Counsel.  The previous

analysis on that point is equally applicable in this context, and the Court need not repeat it here.[13]

*See* supra at 13.

---

[13] Plaintiffs argue that "even if the EEOC did not have a mandatory duty to refer these
cases to DOJ or OSC, it fails to provide any reason why it has not done so."  Pls. Opp'n at 15.
This argument in the alternative is ineffective because if the EEOC did not have a duty to refer,
the Court is without jurisdiction to issue a writ.

While it does not matter to the outcome of this motion, the Court is less sure that Plaintiffs have another remedy available.  The EEOC says that they do, because Plaintiffs may file an action seeking enforcement of the EEOC's order rather than relying on the DOJ or the Office of Special Counsel to bring such an action.  *Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005) ("complainants who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy, may sue to enforce the final administrative disposition").  Plaintiffs may also bring a de novo civil action.  *Id.* ("a complainant 'aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action' under Title VII") (quoting 42 U.S.C. § 2000e–16(c)).

The issue is not discussed in the parties' current briefing, but Ms. Neville did in fact attempt to obtain enforcement directly against the military agencies, in the same action where she sought mandamus against the EEOC.  *Neville,* 778 F. App'x at 286.  She was unsuccessful. The Fifth Circuit invoked the "*Feres* doctrine of intra-military immunity" which "precludes members of the military from pursuing claims against the military or the United States for injuries that arise out of or in the course of military service."  *Id.*  The panel held that Ms. Neville's claims were "incident to her military service"  and that "adjudicating Neville's claims would require the court to review questions of military decision-making barred by the *Feres* doctrine."  *Id.* at 286, 288.  Other circuits, although not the D.C. Circuit, have similarly agreed that *Feres* will bar Title VII claims by dual-status employees when their claims touch upon military structure and decisionmaking.  *See Martinez v. McCarthy*, 838 F. App'x 611, 612 (2d Cir. 2020); *Norris v. Sec'y, U.S. Dep't of Army*, 517 F. App'x 873, 874 (11th Cir. 2013); *Wetherill v. Geren*, 616 F.3d 789, 798 (8th Cir. 2010); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995); *see also Fisher v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001) (going further in holding that dual-

status military technicians are "irreducibly military in nature" and so all Title VII claims are barred by *Feres*).

In short, dual-status military technicians such as Plaintiffs risk an uncertain outcome when making complaints to the EEOC. The EEOC will investigate their claims, because they are civilian employees, and will potentially grant relief. As here, the military agencies may then refuse to comply, and if those dual-status military technicians go to court to enforce the EEOC's ordered relief, they may be met with the *Feres* doctrine precluding any judicial action in their favor.

Still, Plaintiffs' requested relief in this action is foreclosed by law. It also may fail to address their situation. Even if the EEOC did refer their cases, the Attorney General or Office of Special Counsel may well decline to bring the case.[14] And if the cases *were* brought, the *Feres* doctrine might pose the same problems as it did when Ms. Neville tried her own civil action. Ultimately, Plaintiffs' issues emerge from the reality that dual-status military technicians are "rare bird[s]" of the federal workforce. *Babcock v. Kijakazi*, 595 U.S. 77, 80 (2022). This Court is without authority to rewrite the statutory and regulatory frameworks applicable to Plaintiffs, and moreover, without authority to issue the writ requested in Count IV.

Lastly, before concluding, the Court turns to the difficult-to-interpret Count III. The complaint frames it as a claim for "Failure to Promote Statutory Purpose and Protected Class Without Relief" under "Title VII of the Civil Rights Act." *See* Compl. at 28. The EEOC construed Count III as seeking a remedy against the EEOC itself for discrimination and noted that Title VII does not afford any such remedy. *See* Mot. Dismiss at 14–15; Reply at 5. In their

---

[14] As discussed above, the Office of Special Counsel certainly would decline, given that it holds the view that dual-status employees are outside its jurisdiction.

opposition, Plaintiffs reject this characterization and blend Count III with Count IV.  Pls. Opp'n

at 11–12.  As written in the complaint, Count III appears to rely on 29 C.F.R. § 1608.1(B) as the

source of a duty to act by obtaining enforcement of EEOC judgments.  Compl. ¶¶ 126–132.  This

regulation pertains to "affirmative action appropriate under Title VII" and is a "statement of

purpose" about how employers may institute affirmative action in a manner consistent with the

statute.  29 C.F.R. § 1608.1.  The Court sees no possible source in this regulation for a duty to

refer Plaintiffs' cases.  Count III is therefore dismissed for largely the same reason as Count

IV.[15]

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** (ECF No. 14);

Plaintiff's motion for leave to file a supplemental memorandum (ECF No. 22) is **DENIED.**  An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 13, 2024                                    RUDOLPH CONTRERAS
                                                             United States District Judge

---

[15] Plaintiffs also say that if the EEOC's regulations do not require referral to the Attorney General and the Office of Special Counsel, they are unconstitutionally underinclusive.  *See* Pls. Opp'n at 18.  For support, Plaintiffs invoke *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 906 (9th Cir. 2009), which catalogued several Supreme Court decisions holding that speech regulations may violate the First Amendment if they fail to consistently address enough speech to advance the purported government interest.  The present action is not a First Amendment case, and Plaintiffs do not connect any of that case law to Title VII or explain how the EEOC's regulatory framework violates their First Amendment rights.